UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLEN FRIERSON,<br><br>            Plaintiff,<br><br>    v.<br><br>DISTRICT OF COLUMBIA HOUSING AUTHORITY,<br><br>            Defendant. | Case No. 24-cv-2342 (JMC) |

**MEMORANDUM OPINION**

      Plaintiff Allen Frierson sues Defendant District of Columbia Housing Authority (DCHA) for alleged violations of the Federal Insurance Contributions Act (FICA). ECF 1-1. Frierson claims that his employer, DCHA, withheld an inaccurate amount of his wages and contributed an inaccurate amount in taxes to the Internal Revenue Service as required by FICA. *Id.* Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing, among other things, that Frierson failed to state a claim upon which relief can be granted since an implied private right of action does not exist under FICA, and even if it did, that Frierson's claims are barred by Internal Revenue Code's statute of limitations. ECF 3. Frierson filed a scant, three-page response that does not include even one case citation. Because Frierson has failed to adequately rebut DCHA's arguments, the Court will **GRANT** DCHA's motion to dismiss. [1]

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

I. **Background**

For the past 32 years, DCHA has been deducting Frierson's wages to comply with FICA. ECF 1-1 ¶ 1. Under FICA, an employer must deduct and collect 6.2% of an employee's wages to cover "old-age, survivors, and disability insurance" (Social Security tax) and 1.45% of an employee's wages to cover "hospital insurance" (Medicare tax). *See* 26 U.S.C. §§ 3101(a)-(b), 3102(a). Additionally, the employer must contribute matching excise taxes equal to 7.65% of the wages the employer pays the employee. *Id.* §§ 3111(a)-(b). Together, these taxes help finance Social Security and Medicare programs. *See United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 205 (2001). FICA also contains an indemnification provision, which states that an employer that deducts an employee's wages to pay such taxes "shall be indemnified against the claims and demands of any person for the amount of any such payment." 26 U.S.C. § 3102(b).

As Frierson reviewed his Social Security information in preparation for retirement, he noticed that DCHA had, he believed, incorrectly calculated the Social Security deductions from his wages. ECF 1-1 ¶¶ 4, 16. He contacted DCHA's paymaster, who allegedly "acknowledged the error and effected corrective measures which did not resolve the issue." *Id.* ¶ 4. Frierson wrote to Chairman of the Council's Housing Committee Anita Bonds on July 25, 2022, to Council Member Charles Allen two days later, and on September 13, 2022, to the Attorney General of the District of Columbia, notifying them of the error. *Id.* ¶ 10. None responded. *Id.* Frierson then contacted the Chair of DCHA on December 6, 2022, requesting an audit to determine the source of the error. *Id.* They did not respond either, and Frierson's concern went unresolved. *Id.* In his complaint, Frierson requests the Court to look at the U.S. Department of Housing and Urban Development audit report regarding DCHA's management, but he does not describe that report's findings or allege how it is

relevant to his case. *See id.* ¶ 11. He also cites several newspaper articles reporting DCHA's "deficiencies" to imply general administration issues within DCHA. *Id.* ¶¶ 4, 14.

Frierson initially filed his complaint in the Superior Court of the District of Columbia seeking damages in the amount of $1,965,000 plus interest for DCHA's FICA violations, and a declaration from the Court that he is not responsible for any fines to the U.S. Department of the Treasury due to DCHA's errors. ECF 1-1 at 6–11. DCHA removed the suit to this Court. ECF 1. DCHA then filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), ECF 3, to which Frierson responded, ECF 5, and DCHA replied, ECF 6.

## II. **Legal Standard**

In evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from the well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *In re United Mine Workers of Am. Emp. Ben. Plans Litigation*, 854 F. Supp 914, 915 (D.D.C. 1994). Although "detailed factual allegations" are not required, a pleading must contain more than legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a defendant can bring an affirmative defense of statute of limitations, the Court may only grant a motion to dismiss on such grounds if the "complaint on its face is conclusively time-barred." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996); *Potts v. Howard University Hosp.*, 598 F. Supp. 2d 36, 39 (D.D.C. 2009).

### III.   Analysis

**A. The Court has subject matter jurisdiction over this case.**

Frierson argues in his response in opposition to DCHA's motion to dismiss, without pointing to any legal authority, that the Court lacks subject matter jurisdiction over this case. ECF 5 at 3. He thinks that his case should be heard in Superior Court. *Id.* at 1. A plaintiff may bring a motion for remand for lack of subject matter jurisdiction at any time, which Frierson did not file. *See* 28 U.S.C. § 1447(c). Still, the Court also has an independent obligation to assure itself of its jurisdiction. *See Downey v. Ambassador Dev., LLC*, 568 F. Supp. 2d 28, 30 (D.D.C. 2008) ("[T]his Court strictly construes the scope of its removal jurisdiction").

The Court has subject matter jurisdiction over a case through diversity jurisdiction or federal question jurisdiction. *See* 28 U.S.C. §§ 1331–1332. "Federal question jurisdiction only exists if a well-pleaded complaint establishes that 'federal law creates the cause of action asserted' or the case necessarily raises a substantial and actually disputed federal question." *Thomas v. Lescht*, No. 23-cv-3528, 2025 WL 370984, at *2 (D.D.C. Feb. 3, 2025) (quoting *Gunn v. Minton*, 568 U.S. 251, 257 (2013)). Frierson's argument seems to allude to a lack of diversity jurisdiction, since he is a resident of the District of Columbia and DCHA is "an independent entity . . . not under the Office of the Mayor." ECF 5 at 3. However, the lack of diversity jurisdiction is irrelevant in this case. The Court has federal question jurisdiction because Frierson's complaint only alleges violations under a single federal statute, FICA. ECF 1-1 at 6–11. Thus, the Court can still properly exercise jurisdiction over this matter.

**B. No private right of action exists under FICA.**

DCHA's motion to dismiss primarily argues that an individual does not have a private right of action to collect any unpaid taxes; thus, Frierson may not sue his employer directly alleging

FICA violations. ECF 3-1 at 3–7. Though Frierson acknowledges the limits to private rights of action, he is "reluctant to advance the matter to a formal complaint with" the Social Security Administration because it might "trigger an exhaustive audit at the Federal level." ECF 5 at 2. That might, he continues, "morph into a multi-year process," whereas Frierson plans on retiring in the near future. *Id.*

As DCHA correctly states, the statutory language in FICA does not explicitly create a private right of action. *See* 26 U.S.C. §§ 3101–3128; *see also McDonald v. Southern Farm Bureau Life Ins. Co.*, 291 F.3d 718, 722 (11th Cir. 2002) (concluding that "there can be no dispute[] that FICA itself is silent as to whether an employee can sue his employer for proper payment of FICA taxes"). Frierson also does not dispute this proposition. ECF 5 at 2.

The issue, then, is whether FICA includes an implied private right of action. DCHA appropriately cites and analyzes the test laid out by the Supreme Court to conclude that a private right of action is not implicit in FICA. ECF 3-1 at 3–7. To determine whether a statute contains an implied private right of action, courts assess four factors:

> (1) whether the plaintiff is one of the class for whose benefit the statute was enacted; (2) whether some indication exists of legislative intent, explicit or implicit, either to create or to deny a private remedy; (3) whether implying a private right of action is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law, such that it would be inappropriate for the court to infer a cause of action based solely on federal law.

*El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 889 (D.C. Cir. 2014) (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)). Although neither the D.C. Circuit nor any judge in this District appears to have weighed in on whether FICA creates an implied private right of action, DCHA points to other circuits and districts that have analyzed the issue. ECF 3-1 at 3–7. The weight of those authorities persuades the Court to find no private right of action here.

5

First, FICA was not created to benefit employees. *See* 26 U.S.C. §§ 3101–3128. Though taxes collected through FICA contribute to Social Security benefits, which were created to benefit individuals, FICA is merely an instrument through which the federal government collects taxes to finance certain programs. *McDonald*, 291 F.3d at 724; *see also Glanville v. Dupar, Inc.*, 727 F. Supp 2d 596, 601 (S.D. Tex. 2010) (asserting that the purpose of the Social Security Act and FICA are unrelated since "a worker's eligibility for [S]ocial [S]ecurity benefits does not depend on [an] employer's actual payment of FICA taxes"). Since FICA provisions only "concern[] tax rates, deduction and collection procedures, and explanations of the types of employment and wages covered by the [A]ct," there is no reason to conclude that FICA was specially enacted to benefit individual employees like Frierson. *Oplchenski v. Parfums Givenchy, Inc.*, No. 05-c-6105, 2007 WL 495289, at *3 (N.D. Ill. Feb. 12, 2007).

Second, Congress likely did not intend to imply a private cause of action under FICA. Legislative intent can be found by looking to "the language or structure of the statute, or in the circumstances of its enactment." *Thompson v. Thompson*, 484 U.S. 174, 179 (1988). Though "legislative history is completely devoid of any indication that private lawsuits under FICA were even briefly contemplated by Congress," litigants have argued that the indemnification clause within FICA could point to congressional intent. *See Berger v. AXA Network, LLC*, No. 03-c-125, 2003 WL 21530370, at *4 (N.D. Ill. July 7, 2003) (quoting *McDonald*, 291 F.3d at 724); *Sanchez v. Overmyer*, 845 F. Supp. 1178, 1181 (N.D. Ohio 1993). Courts have generally agreed with *McDonald* that Congress added the indemnification clause only to protect employers who correctly deducted wages from suits by employees who did not want their wages deducted to begin with. 26 U.S.C § 3102(b); *see McDonald*, 291 F.3d at 725; *Glanville*, 727 F. Supp. 2d at 601; *Berger*, 2003 WL 21530370, at *4. One case, though, is an outlier. In *Sanchez*, a judge in the Northern

6

District of Ohio assumed from the clause that if employers *incorrectly* deducted wages, they would be subject to private suits by employees for FICA violations. 845 F. Supp. 2d at 1181–82 ("If indemnification for the correct amount is provided, then by implication it must be assumed that Congress envisioned actions under FICA by employees against employers for incorrect amounts paid or complete failure to pay FICA taxes.").

But that assumption does not necessarily follow. Instead, the indemnification provision's text is more consistent with an indemnification against common-law suits (e.g., breach of contract) by employees against their employers for failing to pay them the full amount of their wages (and instead paying some to the IRS). That is likely why the indemnification provision indemnifies the employer for "the amount of any such payment" of FICA tax to the Government, which an employee might otherwise claim belongs to them. *See* 26 U.S.C. § 3102(b). The provision does not imply any kind of cause of action for payments the employer *did not* make and the employee instead (incorrectly) received in his paycheck. As the Eleventh Circuit explained, the statutory text suggests that Congress "included the indemnification provision to protect employers from lawsuits by employees who do not want their salaries reduced in compliance with FICA." *McDonald*, 291 F.3d at 725. That creates no implication that Congress assumed someone could sue for *not* having their salaries reduced. Moreover, as DCHA points out, "although FICA taxes are used to fund the Social Security program, a worker's eligibility for Social Security benefits does not depend on his employer's actual payment of FICA taxes," and thus "[i]f a worker's wages were properly reported to the IRS, he should receive appropriate Social Security benefits, even if his employer failed to pay its portion of the FICA tax." ECF 3-1 at 8 n.1 (citing *McDonald*, 291 F.3d at 724; 42 U.S.C. § 413(a)(2)(A)(ii)). Accordingly, "there would be no need for an employee to sue his employer under FICA to collect the Social Security funds designated for his especial

7

benefit," nor would there be a need to indemnify an employer for such failure to pay. *McDonald*, 294 F.3d at 724. Therefore, the Court finds no evidence of legislative intent sufficient to imply a private cause of action under FICA of the kind Frierson asserts.

Third, the Internal Revenue Code, of which FICA is a part, consists of a legislative scheme providing injured parties with administrative remedies. Courts are reluctant to allow a private cause of action when the statute offers other avenues by which a party can seek remedy. *Karahalios v. Nat'l Fed'n of Fed. Emps.*, 489 U.S. 527, 533 (1989); *see McDonald*, 291 F.3d at 725–26; *Umland v. PLANCO*, 542 F.3d 59, 66 (3d Cir. 2008). As DCHA correctly points out, an employee must file any claims of overpayment within three years of filing their tax returns with the Internal Revenue Service. 26 U.S.C. § 6511(a). An employee can also seek redress with the Commissioner of Social Security regarding any errors in reported wages and request to fix their records. *See* 42 U.S.C. § 405(c)(4)–(5). In the instant case, though Frierson has contacted several authorities, he has not sought remedy from appropriate sources. ECF 1-1 ¶ 10. That Frierson wants to expedite the process by using the Court's resources to require a DCHA audit of his deductions and remittances instead of following administrative procedure is not a sufficient reason to allow for a private suit. ECF 5 at 2; *see McDonald*, 291 F.3d at 725 n.1 (noting that private right of action cannot be granted "merely because a statute's administrative scheme does not satisfy all of a litigant's preferred remedies"); *Oplchenski*, 2007 WL 495289, at *3 (Feb. 12, 2007).

Finally, the Court does not need to address whether a private right of action in FICA would violate principles of federalism when it is clear from the first three factors that Congress did not intend to create an implied private right of action. *McDonald*, 291 F.3d at 726 (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979)).

DCHA points to extensive case law from other district courts generally holding that FICA does not contain an implied private right of action. ECF 3-1 at 3–7; *see e.g.*, *Berera v. MESA Medical Grp., PLLC*, 985 F. Supp. 2d 836, 843 (E.D. Ky. 2013) (finding no implied private right of action under FICA); *Oplchenski,* 2007 WL 495289, at *3–4; *Powell v. Carey Intern, Inc.*, 514 F. Supp. 2d 1302, 1323 (S.D. Fla. 2007) (finding that, as a matter of law, plaintiff could not sue employer for a FICA violation even if the employer incorrectly "designated [p]laintiff as an independent contractor" since no private right of action exists under FICA); *Spilky v. Helphand*, No. 91-cv-3045, 1993 WL 159944, at *3–4 (S.D.N.Y May 11, 1993). The Court is also persuaded by several recent cases from other district courts holding the same. *See Warner v. Trifecta Ventures, LLC*, No. 6:24-cv-00082, 2024 WL 5186926, at *3 (E.D. Ky. Dec. 20, 2024) (finding that no private right of action exists under FICA, though the Sixth Circuit has not weighed in on this question); *Minichino v. La Rosa*, No. 24-cv-04048, 2024 WL 3642188, at *3 (N.D. Cal. Aug. 1, 2024) ("Although the federal government can bring an enforcement action if an employer fails to pay [FICA] taxes, an employee has no right to enforce that requirement by bringing a lawsuit on her own behalf against the employer."); *Lacambra v. Gonzales*, No. 21-cv-01687, 2021 WL 6752279, at *2 n.1 (C.D. Cal. 2021) (finding, on a motion to dismiss, that plaintiff's claim that defendants did not accurately remit FICA contributions must fail since no private right of action exists under FICA); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp. 2d 551, 560 (D. Md. Jan. 23, 2003) ("Neither FICA's text nor its structure supports a finding for an implied private right of action."). For those same reasons, this Court too will grant DCHA's motion to dismiss since FICA does not create a private right of action.

9

### C. Even if a private right of action exists under FICA, Frierson's claims are barred by the statute of limitations.

DCHA next argues that Frierson's FICA claim is barred by the statute of limitations. ECF 3 at 10. DCHA contends that Frierson presumably had access to information about his Social Security withholdings for the entire 32-year period prior to filing the complaint, which Frierson does not dispute. *Id.*; *see also* ECF 5 at 2–3 (offering no explanation as to why Frierson could not have identified the alleged discrepancy sooner). Since Frierson could have discovered errors in his wage deductions each time he received his paycheck, or at least when he filed taxes every year, DCHA argues that the statute of limitations cannot be tolled. ECF 6 at 4. In response, Frierson states that most employees do not have "knowledge of the intricacies" of FICA requirements and employees generally assume employers comply with FICA requirements. ECF 5 at 2–3. While Frierson also notes that he did "identif[y] the issue and affirmatively notif[y] the responsible party who agreed to take corrective action," he does not dispute that he failed to bring this suit until many years after he alleges the deficiencies began. *Id.*

FICA does not include an explicit statute of limitations for private parties' suits against employers for failure to deduct or remit taxes—which is more evidence that FICA implies no such cause of action. But it does include a three-year statute of limitations for actions in court "for the collection of" taxes generally. *See* 26 U.S.C § 6501(a). DCHA argues that this statute of limitations likely encompasses the action here, and the Court agrees—again, assuming this action could even be brought, which this Court finds it cannot. *See* ECF 3-1 at 10; *Coal River Energy, LLC v. Jewell*, 751 F.3d 659, 663 (D.C. Cir. 2014) (applying a statute of limitations from another clause of the statute in question since "[i]t is standard practice for courts to 'borrow' a statute of limitations when one is not explicitly provided"); *Sanchez*, 845 F. Supp. at 1182 (concluding that, if a private right of action did exist under FICA, a three-year statute of limitations period should likely be

applied since similar statutes of limitations apply to other sections of FICA governing collection suits by the IRS). For his part, Frierson does not contest that this statute of limitations, or something similar to it, applies. *See* ECF 5 at 2.

Instead, Frierson invokes the rule that statutes of limitations can be subject to equitable tolling, again without offering any explanation or citing to a single authority.[2] *See id.* at 2–3. Equitable tolling is not "axiomatic in the law," *id.* at 2, as Frierson claims—rather, it only applies if a plaintiff shows that they have pursued their claims with due diligence and extraordinary circumstances beyond plaintiff's control prevented them from filing before the statute of limitations was up, *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016); *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Yet, DCHA persuasively demonstrates Frierson's lack of due diligence by pointing out that he had ample opportunities over the 32-year period to notice and flag any errors in his withholdings. *See* ECF 6 at 4. Frierson makes no showing of any extraordinary circumstances that prevented him from either knowing about these errors or filing his claim against the appropriate party. *See* ECF 5 at 2–3. Since FICA requires the injured party to request correction on any inaccurate payments "within 3 years after the [tax] return was filed," even if a private right of action exists under FICA, Frierson's claim would be barred. 26 U.S.C § 6501(a); *see, e.g.*, *Quattlebaum v. Bank of Am., N.A.*, No. 14-2688, 2015 WL 7185438, at *5 (D. Md. Nov. 12, 2015) ("Even if [] a private right of action existed [for a mortgage servicer's disclosure violations], [the plaintiff's] claim . . . would be barred by the statute of limitations.").

---

[2] Frierson's failure to adequately address DCHA's arguments or provide any legal authority for his arguments frustrates this Court's ability to understand and consider his responses.

11

\*   \*   \*

For the foregoing reasons, the Court **GRANTS** DCHA's motion to dismiss, ECF 3. A separate order accompanies this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: August 1, 2025